

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

April 15, 1947

Hon. T. M. Trimble, First Assistant
State Superintendent of Public Instruction
Department of Education
Austin, Texas

Opinion No. V-141

Re: Status of Tyler In-
dependent School
District where the
city extends the
city limits, and
related questions.

Dear Sir:

We refer to your letter of recent date en-
closing a letter written by Mr. R. S. Boulter, County
Superintendent of Smith County, acknowledged by this
office on February 24, 1947, wherein was requested an
opinion of this Department concerning the status of
the Tyler Independent School District and several re-
lated questions propounded in Mr. Boulter's letter,
which we quote, in part, as follows:

"The Tyler independent district,
by provision of the city charter, is
under control of the City of Tyler, and
the Tyler independent district is so
constituted. By reason of the city char-
ter, the Tyler independent school dis-
trict limits are coterminous with the
city limits of the City of Tyler. The
City Commission appoints the Board of
Trustees of the Tyler independent dis-
trict, and the City Assessor-Collector
of taxes also assesses and collects the
taxes for the schools. There is no dif-
ferentiation between property valuation
for the city and the school district.

"The City of Tyler, prior to Jan-
uary 1, 1947, by ordinance, extended the
city limits to include territory situated
in several common school districts adja-
cent to the Tyler city limits. This was

done some several months prior to January 1, 1947. This territory was included by ordinance of the City Commission without a vote of the people residing in the territory.

"Please advise us concerning the following questions:

"1. Does the territory annexed to the City of Tyler automatically become a part of the City of Tyler and as such constituted a part of the Tyler Independent district?

"2. Does the City Commission of the City of Tyler have authority, by law, to extend the city limits of the city of Tyler for city purposes only?

"3. Does the City Commission of the City of Tyler have authority, by law, to extend the city limits of the City of Tyler for school purposes only?

"4. When the city limits of the City of Tyler are extended so as to attach to the City of Tyler territory lying in one or more common school districts, what responsibility is placed upon the City of Tyler in reference to the indebtedness, including bonds and other existing obligations of the affected common school districts prior to the inclusion of the territory situated in such outlying districts?

"5. In determining the amount of the outstanding obligations that is to be assumed by the City of Tyler or the Tyler independent school district, is it correct to assume that present valuation of property will be considered; or should the amount of the indebtedness be determined from year to year according to the valuation of property in the area detached from the outlying districts, and in proportion to the valuation of taxable property remaining in the affected

districts? Does Article 2805 (Acts
1919, 36th Leg.) apply as to the as-
sumption of indebtedness mentioned
in question No. 5?

"6.   Is it a responsibility of
the City Commission of the City of
Tyler to determine the amount of the
obligation to be assumed by the city
in payment of a part of the outstand-
ing obligation of the affected dis-
tricts, or is this a responsibility
of the Tyler independent school trus-
tees; or do the county trustees and
the common school district trustees
have jurisdiction; or is it a joint
responsibility of the several author-
ities mentioned to adjust the indebt-
edness as between the affected dis-
tricts?

"7.   Is it a responsibility of
the County School Board to re-estab-
lish and redefine the common school
districts losing territory by virtue
of the extension or extensions of the
city limits?

"8.   Is there any responsibility
resting on the City of Tyler to bring
to the attention of the school author-
ities of districts affected by the ex-
tension of the city limits to the ef-
fect that territory has been included
in the city limits and that such dis-
tricts, by virtue of the change of
their territory, should be re-estab-
lished and re-defined, such notice or
notices containing maps and field notes
of territory involved and such other
information needed to assist the school
authorities in adjusting their business
and budgets in conformity with the
changes brought about by the city auth-
orities.

"9.   In view of the fact that the
districts in question have not been as
yet re-established and re-defined by the

County Board, is this construed to
mean that these districts may be
recognized for taxing purposes and
for school census purposes the same
as though no change had been made in
their boundary lines?  Does the ac-
tion of the City Commission taken
prior to January 1, 1947, mean that
the districts in effect were at that
time re-established and re-defined
and that as a matter of course would
so be recognized by all parties con-
cerned?"

Sections 64, 65, 66, 67 and 68 of the city
charter of Tyler, Texas, a home rule city, which charter
was approved on December 1, 1936, provide that the City
of Tyler shall continue to be an independent school dis-
trict having sole and exclusive control of its public
free schools subject to the laws of Texas, and that said
schools shall be governed and controlled by a board of
seven (7) trustees to be appointed by the city commis-
sion until their successors are elected and qualified.
Sections 69 and 70 provide that the public free schools
of the city shall be under the exclusive control and su-
pervision of such board of trustees which shall have
full power to manage, control and govern said schools
granted under the charter as well as all powers granted
or that may be granted by the laws of the State of Texas
to independent school districts.

It is our understanding that there is no ques-
tion concerning the validity of the annexation of adjacent
territory in question to the City of Tyler and that the
same was legally consummated by the proper city authori-
ties acting in full conformance with Sections 61 and 62
of the city charter and enumerated powers granted to the
city by virtue of the provisions of Article 1175, Section
2, V.C.S., and further, that the independent school dis-
trict system in the city has not been separated from muni-
cipal control.

In Attorney General Opinion No. O-3641 this
Department properly held that Article 2804, V.C.S., pro-
vides that whenever the limits of a city which constitutes
an independent school district are extended and enlarged
so as to include adjacent independent or common school
districts, the territory so included "shall hereafter be-
come a part and portion of the independent school district

constituted by such incorporated city"; and in Opinion
No. O-2556, it was held that if the city is such an in-
corporated city constituting an independent school dis-
trict, then the extension of its boundaries would auto-
matically operate to extend the boundaries of the muni-
cipally controlled independent school district.  City
of Houston vs. Tod, 276 S.W. 419; Washington Heights
I.S.D. vs. City of Ft. Worth, 251 S.W. 341.  See also
recent case holding to the same effect, City of Beaumont
I.S.D. vs. Broadus, 182 S.W. 2d 406, writ of error re-
fused.

Accordingly, our answer to your first ques-
tion is in the affirmative.  This answer, of course, is
predicated on the assumption that the Tyler Independent
School District has not been separated or divorced from
municipal control under the authority of Article 2783b,
V.C.S.

Article 2803, V.C.S., provides a method for
the "extension of city limits for school purposes only"
upon a petition of a majority of the resident qualified
voters of the territory to be taken into the city only
for such purposes.  Poteet vs. Bridges, 248 S.W. 415.
The third paragraph of Article 2804, provides further
that the automatic enlargement of school boundaries co-
extensive with the enlargement of municipal boundaries
should not result if it were determined by the voters of
the incorporated city that the added territory taken in-
to the municipal limits should not be taken in for school
purposes.

Accordingly, our answer to your second ques-
tion is in the affirmative provided the city commission
acts under the provisions of Article 2804, third para-
graph, and an election held thereunder has determined
that the territory to be annexed to the city shall not
become a part of the independent school district consti-
tuted by the said city.

Our answer to your third question is in the
affirmative provided the city commission follows the pro-
cedure or methods set out in Article 2803, V.C.S.

Article 2805, V.C.S., provides as follows:

"In all cases where a district is
embraced within an incorporated city or
town, as provided in the preceding Arti-

cle (Art. 2804); and in all cases
where any town or village has been
or may be incorporated for free
school purposes only (Art. 2803)
and which shall include within the
limits thereof any portion of any
common school district which has an
outstanding bonded indebtedness,
then such city, town or village
shall become liable and bound for
the payment of such portion of the
bonded indebtedness of such district
as the assessed value of the portion
thereof so included bears to the en-
tire assessment value of the district
from which the same was taken. The
assessed values of the district so
included shall be those shown upon
the last preceding county tax assess-
ment roll after such districts are so
included; such incorporated city, town
or village shall pay either directly or
through the officers of such district
the proportion of the interest and prin-
cipal of such bonded indebtedness for
which it is liable." (Emphasis ours)

The proper answers to your fourth and fifth
questions are found in the provisions of Article 2805
above quoted, wherein we have indicated by underlining.
In City of Houston vs. Tod, 258 S. W. 839, it was held,
among other things, that a failure of a city, which con-
stitutes an independent school district, upon extending
its limits so as to include part of an adjacent district
which thereupon became a part of the district constituted
by the city, to provide for the assumption of its propor-
tionate part of the indebtedness of a school district
diminished by extension, does not render such extension
void, since Article 2805 definitely fixes liability of
the city for such indebtedness.

We quote from the case of Washington Heights
I.S.D., vs. City of Ft. Worth, supra, at page 345, as fol-
lows:

"In making the change and in al-
lowing the annexation, the Legislature
intended that the liabilities as well
as the rights of property of the orig-

inal independent school districts, as
to the parts of the territory detached,
should be taken over by the city.  The
schoolhouses and school sites passed
as a right appurtenant to the territory
or parcels so allotted or annexed to
the city.  The board of trustees of the
original independent school district
would, by operation of law, lose all
control and right of management over
the transferred portion and the proper-
ty thereon from and after the time the
annexation or transfer becomes legally
effective.  But the vesting of the right
in the city to take over the portion of
territory of the original independent
school districts also requires allowance
by the city to the said original dis-
tricts of its proper proportion of the
value of the improvements made upon the
premises.  The city can make this pay-
ment after the accession, as the statute
does not require it to be done before."

Furthermore, it has been held that a city
extending its territory to include an independent school
district has the right to tax the annexed territory for
school purposes.  Tod vs. City of Houston, Com. App.,
276 S. W. 419, affirming judgment in City of Houston vs.
Tod, 256 S. W. 839.

Paragraph 2 of Article 2804 provides:

"If within the portion of such dis-
trict so embraced there should be situa-
ted any real property belonging to such
district, such city or town may acquire
the same upon such terms as may be mutual-
ly agreed upon between the governing body
of such city or town and the authorities
of such district."

This legislation and Article 2805 covers the
matters set out in your sixth question and means to auth-
orize the adjustment of equities between the two authori-
ties (the governing body of such city and the authorities
of such school districts whose areas have been diminished)
voluntarily as they may agree, or by a judicial proceed-
ing if necessary.

With respect to your eighth question, we have found no statute, nor has any been brought to our attention, which specifically places the responsibility on the city of Tyler to notify the school districts affected by the extension or to provide field notes, plats, etc., denoting the new boundaries of the city.  However, necessarily, it would seem to follow that since Article 2805 definitely fixes the liability of the city for its proportionate part of the indebtedness of the district diminished by the extension, and since the city has the right to tax the annexed territory for school purposes, and because Article 2803, paragraph 2, permits and requires the city authorities acting in cooperation with the diminished school district authorities to adjust the equities, that a duty may properly and reasonably be implied that the City of Tyler should notify and assist the diminished school district concerning all matters involved covering boundaries, taxes and assumption of indebtedness.

With respect to your seventh and ninth questions, we have the following to say.  It was held in the Broadus case, 152 S.W. 2d 406, that where the City of Beaumont extended its boundaries so as to embrace part of an adjacent independent school district, the portion so embraced became a part of the city independent school district, notwithstanding Articles 2742e, 2742f giving the county board of school trustees authority to change boundaries of school districts generally had not been complied with.  The Court said therein also that Article 2804 and Articles 2742e, 2742f subsequently enacted, and relating to county trustees' authority to change boundaries of school districts generally and of common school districts are not so conflicting as to bring the earlier Act (Article 2804) within the general repealing clause of the later Articles.

We have herein in answer to your first question advised that the extension of the City of Tyler boundaries automatically operated to extend the boundaries of its municipally controlled independent school district.  To the extent the boundary of the city independent school district was changed to include portions of the areas of the common school districts affected thereby, the boundaries of the diminished common school districts also for all purposes automatically were affected and changed thereby.  True, the county school board acting under the provisions of Article 2742e, Section 2; 2742b, Section 9, and/or 2742f, Section 1, has

the authority to change the boundary and effect adjustments of bonded indebtedness of so-called rural common and independent school districts, but it has never been recognized that the county school board had authority over municipally controlled independent school districts. Broadus case, supra.  Article 2681, V.C.S., specifically provides that "a record of school districts" should be kept by the county board, showing the field notes of all changes made in school district lines; however, it is apparent that this Article does not refer to schools over which cities and towns have assumed exclusive control.

The change in the school boundaries of all the school districts involved being automatic and effective from and after the time the annexation becomes legally effective, the districts as enlarged or diminished thereby may be recognized for taxing purposes and school census purposes without further action by any board redefining or reestablishing such districts.  Such districts exist as previously created and existing at the time of the ordinance in question subject to the change of the areas and boundaries affected by the enactment of the City of Tyler extending its city limits.  We would advise, of course, that the proper authorities as designated herein meet to settle voluntarily the liabilities involved, to ascertain the true and correct boundaries of their school districts as modified by the city ordinance, and to record the matters and field notes with the county school board in order that each district may ascertain its jurisdictional confines for taxing and census purposes.

### SUMMARY

When the limits of the City of Tyler constituting an independent school district, were extended to include territory of adjacent common school districts, the extension automatically operated to extend the boundaries of the municipally controlled independent school district and automatically operated to modify the boundaries of the common school districts diminished thereby.  Article 2804, V.C.S.; City of Beaumont I.S.D. vs. Broadus, 182 S.W. 2d 406, writ ref., and cases cited therein.

The city must assume its proportionate part of the indebtedness of the school districts

diminished by extension using the assessed values basis provided in Article 2805, V.C.S.  The governing body of the city and the boards of trustees of the school districts diminished may adjust the equities voluntarily by agreements or by judicial proceeding if necessary.  Art. 2804, V.C.S.; Washington Heights I.S.D. vs. City of Ft. Worth, 251 S.W. 241; Tod vs. City of Houston, 276 S.W. 419, affirmed in 258 S.W. 839.

The existing school districts as increased or diminished by the Tyler city ordinance increasing its city limits may be recognized for taxing and school census purposes.

Article 2681, V.C.S., which requires the county school board to keep "a record of school districts" showing the field notes of all changes made in school district lines does not refer to municipally controlled school districts.

The city commission of the City of Tyler acting in conformity with Articles 2803 or 2804, V.C.S., has authority to extend the city limits for city purposes only or for school purposes only.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By      Chester E. Ollison

Chester E. Ollison
Assistant

CEO:djm:wb

APPROVED APRIL 15, 1947

Price Daniel

ATTORNEY GENERAL OF TEXAS